## 60176. DUNCAN v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was indicted for the offenses of criminal attempt to commit burglary, motor vehicle theft, and theft by receiving stolen property. Defendant was acquitted of the charges of criminal attempt to commit burglary and motor vehicle theft. The jury

returned a verdict of guilty of theft by receiving stolen property, a 1966 Cadillac automobile. A motion for new trial was filed and denied. Defendant appeals. *Held:*

1. Defendant was arrested by police officers responding to a burglary call when the vehicle he was driving was pointed out to police by a witness to an attempted burglary. Police ran a computer check on the tag of the vehicle the defendant was driving and discovered that the 1966 Cadillac was a stolen vehicle. The vehicle in question had been stolen three days prior to the defendant's arrest. Defendant stated to officers soon after his arrest that he had won the car in a crap game and then stated to officers that he had borrowed it from his girl friend. At the trial of the case defendant testified that he was holding the automobile as security for $200 he had loaned one Charles Edwards at a card game.

Defendant contends that the state's evidence is insufficient to support his conviction. However, defendant's possession of the stolen property, coupled with evasive and contradictory explanations as to how he had gained possession of the motor vehicle which had been stolen only three days previously, was sufficient circumstantial evidence to authorize the jury to conclude that defendant had knowledge that the 1966 Cadillac automobile in his possession was stolen property. *Saunders v. State,* 145 Ga. App. 248, 249 (1) (243 SE2d 668).

After a careful review of the trial transcript and record we find, and so hold, that a rational trier of fact (the jury in the case sub judice) could reasonably have found the defendant guilty beyond a reasonable doubt of the offense of theft by receiving stolen property. *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916); *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133).

2. Defendant contends the trial court erred in admitting evidence of other alleged crimes to show "a scheme of defense." The trial court overruled defendant's objection to the admission of such evidence. The evidence presented by the state intended to illustrate a modus operandi whereby defendant would befriend a victim, steal from him, and when accused of the crime, accuse the victim of homosexual conduct, depending on the stigma of homosexuality to induce the victim to decline to prosecute or to discredit the victim. The defendant having accused the victim in the attempted burglary of which he was charged of having made homosexual advances toward him, the state was permitted to introduce evidence that in another burglary case against defendant, defendant had also accused that victim of being a homosexual. Evidence which tends to prove a plan, motive, scheme, or bent of mind is not inadmissible because it tends to prove the commission of another crime. *Tuzman v. State,*

145 Ga., App. 761, 762-763 (1) (244 SE2d 882).

3. Defendant next claims that the trial court erred in charging the jury that "the acts of a person of sound mind and discretion are presumed to be the product of the person's will but this presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but this presumption may be rebutted." Defendant argues that this charge creates a presumption which is not logically established by the evidence and has the effect of shifting the burden of persuasion to the defendant. See in this regard In Re Winship, 397 U. S. 358, 364 (90 SC 1068, 25 LE2d 368); Morissette v. United States, 342 U. S. 246, 274 (72 SC 240, 96 LE2d 288); Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39).

The trial court also charged as to the burden of proof, reasonable doubt, that criminal intent will not be presumed, and as pointed out in the challenged portion of the charge that the presumption may be rebutted. The charge taken as a whole is not burden shifting and such presumptions as are created are authorized by the "rational connection" test of Leary v. United States, 395 U. S. 6, 36 (89 SC 1532, 23 LE2d 57). The issues presented by this enumeration of error have been decided adversely to defendant in *Skrine v. State,* 244 Ga. 520 (260 SE2d 900).

4. Defendant enumerates as error the refusal of the trial court "to declare a mistrial due to the fact that the alternate juror had been present with the jury panel, and had participated with the jury, during deliberations." Approximately 55 minutes after the jury had retired to the jury room to begin deliberations it was brought to the trial court's attention that the alternate juror was in the jury room. The alternate juror's presence in the jury room was inadvertent and unnoticed initially by the trial court, the state and the defendant. However, immediately upon this misadventure being called to the trial court's attention the jury was called into the courtroom.

Upon the trial court's query of the foreman of the jury it was determined that the jury had not reached a verdict, was not close to a verdict, and that the alternate juror had not been allowed to vote. The alternate juror was excused from the jury box, and the trial court inquired of each individual regular juror whether the fact that the alternate juror had been in the jury room has caused or will cause you to vote any differently than you otherwise would have voted and would this in any way cause you to vote any differently in the future. To this inquiry each of the twelve regular jurors answered negatively. The court then inquired of the foreman as to the part, if any, the alternate juror had taken in the deliberation in the case up to that point. The foreman responded that the alternate juror "has stated

her opinion of the evidence that had been presented to us, and she has stated some of her personal experience relating to similar types of situations." The court then inquired again as to whether the jury was close to a verdict, and the foreman reaffirmed that it was not. The court then instructed the jury to disregard any comments made by the alternate juror during the time that she had been with the deliberating jury. Further, the jury was instructed "that you should not be in any way influenced by her presence or anything that she might have said or done while she's been out in the jury room with you as a juror after you began your deliberations . . . I will instruct you to return to the jury room and continue your deliberations and entirely disregard and remove from your minds insofar as humanly possible any actions, conduct, deliberations or any part whatever that the alternate juror has played in your presence or in the deliberation of the case up to this point, and you can return to the jury room for your final deliberations in the case."

The Supreme Court of Georgia has said in *Johnson v. State,* 235 Ga. 486, 493 (6) (220 SE2d 448), that "[t]he alternate juror, when he entered the jury room at the time the jury began to deliberate, became, like any third party, a stranger to the jury," citing United States v. Beasley, 464 F2d 468 (10th Cir. 1972). However, in *Johnson v. State,* 235 Ga. 486, 493, 494 (6), supra, it was held that "[w]henever such jury misconduct is shown, a presumption of injury to the defendant is raised, which the state must overcome by a showing of harmlessness."

In the case sub judice the learned and experienced trial judge took immediate action to remove the alternate juror from the jury room and questioned each of the regular jurors. The trial judge determined from each that the alternate juror's presence and actions had not influenced and would not influence each individual juror's vote. It was determined that at this point in time the jury had not reached a verdict, was not close to a verdict, and that the alternate juror had not been allowed to vote. Additionally, the trial judge gave the twelve regular jurors appropriate instructions and returned them to the jury room to continue their deliberations. In view of the totality of the facts and circumstances in the case sub judice we hold that the trial judge correctly handled this unusual situation and did not err in declining to grant defendant's motion for mistrial as any presumption of injury to the defendant was overcome and the alternate juror's presence in the jury room was harmless.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED JULY 1, 1980 — DECIDED SEPTEMBER 8, 1980 —

*Daniel Kane*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert, III, Assistant District Attorneys*, for appellee.