39201. DEVIER v. THE STATE.
39253. ROGERS v. THE STATE.

WELTNER, Justice.

1. Devier and Rogers were indicted by a grand jury of Floyd County for unconnected murders. Both were convicted and sentenced to death in unrelated trials.

The principal issue in both appeals, which proceeded separately, is the constitutionality of the grand jury list of Floyd County, from which were drawn the names of the grand juries which indicted both.

Because evidence relative to that issue is, by stipulation, identical in each case, and the disposition of that issue of necessity will be the same as to each case, we have combined both appeals.

· The essential elements of evidence are as follows: at times material, the Floyd County grand jury list was drawn principally from the voters' list, and contained 1,809 names, all but seven of which are identifiable as to race and sex; females constitute 18% of the grand jury list; females over the age of 18 constitute 54% of the population of Floyd County.

Devier and Rogers insist that the grand jury list does not reflect a fair cross section of the community.

In response, the jury commissioners denied any intent to exclude women from the grand jury list, and sought to explain the disparity on several grounds, including the existence of certain statutory exemptions from jury duty under which an undetermined number of women in Floyd County had asked the removal of their names from the jury list. The State further contends that the disparity is explainable by a reluctance on the part of women in Floyd County to serve on juries — notwithstanding that women make up 39.8% of the basic jury list.

OCGA § 15-12-40 (a) (1) (Code Ann. § 59-106) specifies the responsibilities of the board of jury commissioners in compiling, maintaining and revising jury lists, as follows: "In composing such list the commissioners shall select a fairly representative cross section of the intelligent and upright citizens of the county...." It provides also: "If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross section of the intelligent and upright citizens of the county, they shall supplement the list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly represented on the jury list."

Thus, by statute, the standard for the jury list is that it be a fairly representative cross section of the intelligent and upright citizens of the county. *Berryhill v. State,* 249 Ga. 442, 446 (291 SE2d 685) (1982).

That this standard applies alike to the grand jury list was plainly established in *Sanders v. State,* 237 Ga. 858 (1) (230 SE2d 291) (1976).

Hence, notwithstanding the mass of testimony in the trial court relative to good faith and intent, the statute demands that we examine the proportional representation of women on the grand jury

list to determine whether or not the grand jury list is fairly representative of the community.

In *Sanders v. State,* supra, we held that a grand jury list was not fairly representative of the community when women made up 55% of the population, and 15% of the grand jury list. Here, women comprised 54% of the population of Floyd County, and 18% of the grand jury list.

Hence, these cases are governed, in law and in fact, by *Sanders v. State,* supra.

The challenges of Devier and Rogers to the composition of the jury list of Floyd County being well-taken, their convictions and sentences must be set aside, and their cases remanded for rein- dictment and retrial.

We are by no means unmindful of the brutality reflected in the records of both of these trials, nor of the outrage of the community, nor of the sense of frustration which attends the seemingly in- terminable appeals process in capital cases. Better, we feel, that the attack upon grand jury composition be dealt with dispositively now — on first review by any court — than that these appeals follow the usual peregrination within state and federal systems until, years later, some element of the federal judicial system will — inevitably and unavoidably — accomplish the same disposition, on federal grounds, which we make today. See, e.g., Machetti v. Linahan, 679 F2d 236 (11th Cir. 1982), reversing seven years after conviction on a similar challenge.

2. One additional matter must be dealt with, which is whether the evidence is sufficient to support the verdicts of guilty. We have reviewed the evidence in both cases and find it amply sufficient to support both convictions under Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments reversed. All the Justices concur.*

DECIDED MARCH 1, 1983.

*Duffey & Duffey, Harl C. Duffey, Jr.,* for appellant (case no. 39201).

*Robert J. Evans,* for appellant (case no. 39253).

*F. Larry Salmon, District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.