## A95A0260. THE STATE v. WILLIAMS.
(458 SE2d 906)

McMURRAY, Presiding Judge.

On October 26, 1993, defendant was indicted in the Superior Court of Fulton County for child molestation, aggravated child molestation and statutory rape. Less than six weeks later, defense counsel arranged with Clayton County law enforcement authorities for defendant to submit to a state-administered polygraph examination. Defense counsel, however, was not permitted to attend the polygraph examination, nor was he present when defendant was interrogated later by a detective who was not involved in administering the polygraph test. As a result, defendant gave the Clayton County detective incriminating information regarding conduct relevant to the crimes charged in the Fulton County indictment. Defendant's attorney was thereafter allowed to withdraw and another attorney filed a motion to suppress on defendant's behalf.

The evidence adduced at a suppression hearing reveals that defendant and his first attorney met with Detective John Derbyshire of the Clayton County Police Department at police headquarters on December 8, 1993, and discussed an agreement for defendant to submit to a state-administered polygraph examination. At this meeting, defense counsel advised defendant that "if he passed the polygraph, he would be released; and if not, the procedure would be [that defendant] would be booked into the county jail and [defense counsel] would make arrangements for bond." Defense counsel then escorted defendant to the examination room and waited for the polygraph examiner, Sergeant Ronnie Keith Evans of the Clayton County Police Department. "When Sergeant Evans was ready, [defense counsel and defendant] went over the questions that were going to be proposed and just went through what the procedure would be. [Defense counsel] told [defendant] that during the course of the polygraph, that he was to answer the questions as briefly as possible and to volunteer no information." Defense counsel then left the examination room and Sergeant Evans took over.[1]

Sergeant Evans first had defendant execute forms indicating that defendant understood and waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694); that defendant freely and voluntarily consented to the polygraph examination and that defendant stipulated to the admissibility of any information gleaned during the polygraph test. Sergeant Evans then proceeded with his examination and, after over two hours of questioning and monitoring,

---

[1] Although a two-way mirror was available for defendant's attorney to view the polygraph examination, he was not permitted to confer with defendant or be present during the polygraph test. Sergeant Evans explained that "it's always just me and the examinee."

he advised defendant that the polygraph results indicated that defendant was being deceptive. The sergeant then "asked [defendant] if he would tell . . . what he had done[, but defendant] refused to provide [Sergeant Evans] with any information." According to Sergeant Evans, defendant only "advised that he had not done everything that he had been accused of doing, but he had not been completely truthful in that he had done some things."

Defendant testified that Sergeant Evans pressed him hard for information after the polygraph examination even though he asked for his attorney several times. In contrast, Sergeant Evans testified that defendant asked for Detective Derbyshire after he advised defendant about the polygraph results and that, in compliance with this request, he escorted defendant to Detective Derbyshire's office. Further, defendant insisted that he "asked for [his] attorney" again when he entered Detective Derbyshire's office, but Detective Derbyshire testified that defendant then only "asked where his attorney was [and that he] advised [defendant that] his attorney had left."[2] In either case, however, it is undisputed that Detective Derbyshire began interrogating defendant without advising him of his "constitutional rights" and that defendant provided the detective with incriminating admissions relating to the crimes charged in the Fulton County indictment.

The trial court granted defendant's motion to suppress based on a finding that Sergeant Evans went beyond the scope of the polygraph examination by questioning defendant after he "told the defendant that he didn't pass and started questioning him." This appeal followed. *Held*:

The State contends that the evidence is insufficient to support the trial court's finding that defendant's incriminating admissions were uttered outside the scope of the polygraph examination and (apparently) beyond defendant's consent to submit to polygraph interrogation and his voluntary waiver of constitutional rights.

An appellate court must construe the evidence with an eye toward upholding the trial court's findings and judgment when reviewing an order concerning a motion to suppress. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646). In the case sub judice, the evidence indicates that defendant only waived his constitutional rights in contemplation of a polygraph examination limited to questions that were approved by defense counsel. It also appears that defendant's execution of the consent and waiver of rights forms was not just premised upon the State's promise not to arrest defendant if he passed the test, but was also based on Sergeant Evans's assurances (to defense counsel)

---

[2] It appears that defense counsel not only failed to watch the polygraph examination through the two-way mirror, he left the police station while defendant was in with Sergeant Evans and only advised Detective Derbyshire of his departure.

that he would not go beyond the limited scope of the approved questioning and that he would not attempt to circumvent defense counsel's directions for defendant "to answer the questions as briefly as possible and to volunteer no information." Moreover, there is evidence which would authorize a finding that defendant did not knowingly, freely and voluntarily agree to submit to unfettered police interrogation outside the presence of his attorney and the scope of the polygraph examination.[3] In this regard, it is undisputed that Detective Derbyshire did not independently advise defendant of his "constitutional rights" (he only asked defendant if Sergeant Evans had been over his constitutional rights) and defendant testified that he asked for his attorney several times before Detective Derbyshire began interrogating him. Under these circumstances, we cannot say that the trial court's findings and conclusion were unsupported by any evidence. We must therefore affirm the trial court's order granting defendant's motion to suppress. *Tate v. State*, 264 Ga. 53, 54 (1), supra.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED JULY 7, 1995.

*Lewis R. Slaton, District Attorney, Kenneth D. Feldman, Carl P. Greenberg, Assistant District Attorneys*, for appellant.
*Ted Johnson*, for appellee.

---

[3] See *Johnson v. State*, 208 Ga. App. 87 (1), 88, fn. 1 (429 SE2d 690), where this Court questioned the voluntariness of any polygraph interrogation where defense counsel is not permitted in the examination room during testing.